UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, AMERICAN HOME ASSURANCE COMPANY, AND ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>                                Plaintiffs,<br>vs.<br>PEOPLEASE CORPORATION, INC. AND PLC SERVICES, INC.<br>                                Defendants. | Civil Action No. 12-CV-1984 (RWS)<br><br>**DEFENDANTS' ANSWER AND COUNTERCLAIMS** |

Defendants, PeopLease Corporation, Inc. ("PeopLease") and PLC Services, Inc. ("PLC") (collectively "PeopLease" or "Defendants"), hereby answer the Complaint of Plaintiffs, The Insurance Company of the State of Pennsylvania, American Home Assurance Company, and Illinois National Insurance Company (collectively "AIG" or "Plaintiffs"), and for grounds states as follows:

## PARTIES

1.    Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the complaint.

2.    Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the complaint.

3.    Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the complaint.

4.    Defendants admit the allegations contained in Paragraph 4 of the complaint.

5. Defendants admit the allegations contained in Paragraph 5 of the complaint.

## JURISDICTION AND VENUE

6. The allegations contained in Paragraph 6 set forth legal conclusions to which no response is necessary. However, to the extent a response is required, Defendants deny these allegations.

7. The allegations contained in Paragraph 7 set forth legal conclusions to which no response is necessary. However, to the extent a response is required, Defendants deny these allegations.

## BACKGROUND

### Introduction

8. Defendants admit that the case involves workers' compensation policies. The remaining allegations contained in Paragraph 8 are denied.

9. Defendants admit the allegations contained in Paragraph 9.

10. Defendants admit the allegations contained in Paragraph 10.

11. Defendants admit that it bought workers compensation insurance policies from one or more AIG insurance company that covered the policy years 2005-2006 and 2006-2007. The remaining allegations contained in Paragraph 11 are denied.

12. Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the complaint.

13. Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the complaint.

14. Defendants admit that one or more of the AIG insurance companies sold to PeopLease insurance policies for the years 2005-2006 and 2006-2007.

-2-

nydocs1-986271.1

Defendants lack information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of the complaint.

15. Defendants admit that it paid an estimated policy premium to AIG at the inception of each policy year. Defendants deny the remaining allegations contained in Paragraph 15 and further state that the Policies speak for themselves.

16. Defendants deny the allegations contained in Paragraph 16 and further state that the Policies speak for themselves.

17. Defendants deny the allegations contained in Paragraph 17 and further state that the Policies speak for themselves.

18. Defendants deny the allegations contained in Paragraph 18 and further state that the Policies speak for themselves.

19. Defendants deny the allegations contained in Paragraph 19 and further state that the Policies speak for themselves.

20. Defendants admit that AIG sold Defendants insurance policies and that claims were made against those policies. Defendants deny the allegations contained in Paragraph 20 to the extent that it suggests that AIG properly administered and paid claims made pursuant to the Policies. Defendants deny the remaining allegations contained in Paragraph 20.

21. Defendants deny the allegations contained in Paragraph 21.

**The 2005 Insurance Contracts**

22. Defendants deny the allegations contained in Paragraph 22 and further state that the Policies speak for themselves.

**The 2006 Insurance Contracts**

23. Defendants deny the allegations contained in Paragraph 23 and further state that the Policies speak for themselves.

**PeopLease Breaches the Policies**

24. The allegations contained in Paragraph 24 purport to characterize the complaint and no answer is required by Defendants with respect to such allegations.

25. Defendants deny the allegations contained in Paragraph 25 and further state that the Policies speak for themselves.

26. Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the complaint.

27. Defendants deny the allegations contained in Paragraph 27.

28. Defendants deny the allegations contained in Paragraph 28.

29. Defendants deny the remaining allegations in Paragraph 29.

30. The allegations contained in Paragraph 30 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 30 are denied.

31. The allegations contained in Paragraph 31 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 31 are denied.

### FIRST CLAIM FOR RELIEF

#### *(Breach of Contract)*

32. Defendants incorporate by reference their answers to paragraphs 1 through 31 as set forth above.

33. Defendants admit the allegations contained in Paragraph 33.

nydocs1-986271.1

34. Defendants deny the allegations contained in Paragraph 34 as they refer to the Policies which speak for themselves.

35. Defendants deny the allegations contained in Paragraph 35.

36. Defendants deny the allegations contained in Paragraph 36.

37. Defendants deny the allegations contained in Paragraph 36. Defendants further deny that Plaintiffs are entitled to any of the relief requested in Paragraph 37.

## SECOND CLAIM FOR RELIEF

### *(Alternatively, for Unjust Enrichment)*

38. Defendants incorporate by reference their answers to paragraphs 1 through 37 as set forth above.

39. Defendants admit the allegations contained in Paragraph 39.

40. Defendants admit the allegations contained in Paragraph 40.

41. Defendants deny the allegations contained in Paragraph 41, except admit that AIG has paid some amount of workers' compensation claims submitted by PeopLease.

42. Defendants deny the allegations contained in Paragraph 42.

43. Defendants deny the allegations contained in Paragraph 43.

44. The allegations contained in Paragraph 44 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 44 are denied.

45. The allegations contained in Paragraph 45 are conclusions of law to which no response is required. To the extent that a response is necessary, the allegations in Paragraph 45 are denied.

46. Defendants deny the allegations contained in Paragraph 46.

Defendants further deny that Plaintiffs are entitled to any of the relief requested in the prayer for relief.

## AFFIRMATIVE DEFENSES

Further answering, Defendants state the following as affirmative defenses to the complaint:

### FIRST AFFIRMATIVE DEFENSE

47. Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### SECOND AFFIRMATIVE DEFENSE

48. Plaintiffs' claims are barred due to their breach of the implied covenant of good faith and fair dealing and/or by their bad faith conduct.

### THIRD AFFIRMATIVE DEFENSE

49. Plaintiffs' claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

50. Plaintiffs' claims fail because they breached the insurance policies they sold to Defendants.

### FIFTH AFFIRMATIVE DEFENSE

51. Plaintiffs' complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SIXTH AFFIRMATIVE DEFENSE

52. Plaintiffs' claims are barred by the doctrines of waiver, laches, and/or estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

53. Plaintiffs' claims fail because Plaintiffs have not sustained any damages.

### EIGHTH AFFIRMATIVE DEFENSE

54. Plaintiffs' damages, if any, were caused by their own acts or omissions.

### NINTH AFFIRMATIVE DEFENSE

55. Defendants are entitled to a set-off of Plaintiffs' damages, if any, as Plaintiffs' damages are based on improper, negligent and unlawful handling of the workers' compensation claims made against PeopLease under the Policies.

WHEREFORE, Defendants pray that Plaintiffs' complaint be dismissed, that Defendants be awarded reasonable attorneys' fees and costs, and for such other and further relief as may be proper and just.

### COUNTERCLAIMS

PeopLease Corporation, Inc. and PLC Services, Inc. for their Counterclaims allege and state as follows:

### NATURE OF THE ACTION

56. This action arises out of a dispute concerning alleged payments owed by PeopLease in relation to workers compensation insurance policies sold to PeopLease by Plaintiffs The Insurance Company of the State of Pennsylvania, American Home Assurance Company, and Illinois National Insurance Company (collectively "AIG"). PeopLease's counterclaims for negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and for an accounting against AIG are based on AIG's improper and inflated calculation of losses and adjustment of claims which resulted in excessive premium payments and requests for

increased collateral deposits from PeopLease all in contravention of AIG's obligations under the Policies and duty to exercise reasonable care in their handling of PeopLease's claims.

## PARTIES

57. Counter-Plaintiff PeopLease Corporation, Inc. ("PeopLease") is a South Carolina corporation with its offices and principal place of business in South Carolina.

58. Counter-Plaintiff PLC Services, Inc. ("PLC") is an Indiana corporation with its offices and principal place of business in South Carolina.

59. Upon information and belief, Counter-Defendant The Insurance Company of the State of Pennsylvania ("ICP") is a Pennsylvania corporation, with its principal place of business in New York.

60. Upon information and belief, Counter-Defendant American Home Assurance Company ("AHAC") is a New York corporation, with its principal place of business in New York.

61. Upon information and belief, Counter-Defendant Illinois National Insurance Company ("INIC") is an Illinois corporation, with its principal place of business in New York.

## JURISDICTION AND VENUE

62. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

63. Venue is proper in this Court due to 28 U.S.C. § 1391.

## FACTS APPLICABLE TO THE COUNTERCLAIMS

### The Insurance Policies

64. In or about November 2005, AIG sold to PeopLease a Workers Compensation and Employers Liability Insurance program with a policy period from December 1, 2005 through December 1, 2006 (the "2005 Policy").

65. The program bound was a Paid Loss Large Risk Rating Plan ("LRRP") with a $1 million policy limit per accident.

66. The 2005 Policy required a security of $12,000,000.00 to be paid in twelve monthly installments.

67. AIG and PeopLease agreed that the security was to be a working deposit from which premium payments would be made.

68. On or about January 10, 2007, the over $12,000,000.00 in security payments made by PeopLease under the 2005 Policies was transferred from an escrow account maintained by AIG to a premium account.

69. On or about January 12, 2007, as additional security, PeopLease also posted a letter of credit in the amount of $3,300,000.00.

70. Pursuant to the 2005 Policies, AIG also agreed to credit to PeopLease interest accrued on the cash security account.

71. In or about November 2006, AIG sold to PeopLease a Workers Compensation and Employers Liability Insurance program with a policy period from December 1, 2006 through December 1, 2007 (the "2006 Policy").

72. The 2006 Policy was a large deductible program with a $1 million policy limit per accident and required monthly security payments.

73. PeopLease paid AIG all of the premiums lawfully due and owed to purchase the Policies.

74. PeopLease has complied with all applicable conditions precedent, except those that have been excused, and all obligations under the Policies.

### AIG's Failure to Properly Calculate Premiums Due Under the Policies

75. As with most LRRP insurance programs, the amount of premium for which PeopLease is ultimately responsible in a given policy period is retrospectively calculated. Pursuant to the terms of the Policies, the premium calculation for a given policy period (known as the rating period) utilized in its formula the amount of the paid losses during the applicable time period and the Total Payroll, as defined in the Policies.

76. When binding the 2005 Policies, the parties agreed that the Total Payroll amount to be used in the rating plan calculation was based on all states. The parties further agreed that PeopLease would be allowed a per diem credit of up to $52 per day when calculating Total Payroll.

77. In on about March 2007, AIG requested that PeopLease provide it with certain information in order to assist with its audit of the 2005 Policies.

78. On behalf of PeopLease, Aon, the insurance broker involved in placing both Policies, responded by email dated April 2, 2007, that AIG's requests sought information that was not consistent with the terms of the 2005 Policy.

79. In or about August and September 2007, PeopLease became aware that when AIG conducted the audit and retrocalculation for the 2005 Policy, AIG failed to include Florida in the Total Payroll, as required by the terms of the policy.

80. On or about November 7, 2007, PeopLease requested that AIG calculate the LRRP to include Florida in the Total Payroll.

81. In or about August and September 2007, PeopLease realized that when conducting the audit and retrocalculation for the 2005 Policy, AIG additionally failed to apply the proper per diem credit of $52 in the Total Payroll amount.

82. On or about November 7, 2007, PeopLease requested that AIG apply the proper per diem credit in the Total Payroll.

83. AIG's faulty retrocalculation resulted in an inflated LRRP rating of approximately $16 million for which AIG has demanded payment.

84. AIG has refused or failed to perform a recalculation that reflects the parties agreement when entering into the contracts of insurance.

### AIG's Failure to Adjust Claims With Reasonable Care

85. Pursuant to the Policies, PeopLease was required to provide AIG collateral to cover losses on claims under the Policies within the deductible. The amount of collateral required was determined in part by a formula based on PeopLease's loss history for claims under the Policies. Generally, the more money PeopLease paid out in claims covered by the Policies, the more collateral PeopLease was required to provide to AIG.

86. Under the terms of the Policies, AIG also assumed the duty to administer and adjust claims made against PeopLease under the Policies. As a result of that assumption, AIG owed PeopLease a duty to act reasonably and exercise ordinary care and skill in the execution of those duties. Pursuant to the Policies, claims administration was performed through AIG Claims Services, Inc. ("AIGCS"), a wholly-owned subsidiary of AIG.

87. Upon information and belief, AIGCS acted as AIG's agent when administering the claims made against PeopLease under the Policies.

-11-

88.  AIG had a duty to act reasonably and exercise care and skill in the supervision of AIGCS.

89.  Pursuant to the agreement, amongst other things, AIGCS agreed to deliver to PeopLease "effective risk control and claim management services which measurably reduce the ultimate cost of risk."

90.  AIG failed to act reasonably and exercise ordinary care and skill in the adjusting of claims under the Policies, or supervising AIGS in the adjusting of claims under the Policies, in several regards, including but not limited to the failure to:

- Complete timely and appropriate investigations into claims;

- Adequately manage medical treatments for claimants; and

- Provide claims services that had the effect of reducing PeopLease's ultimate cost of risk.

91.  As a result of AIG's failure to reasonably adjust claims under the Policies, PeopLease was damaged by having to pay more money on claims than it would have paid had AIG exercised due care in performing their duties to PeopLease.

92.  AIG's improper claims adjustment has resulted in more than $1,000,000.00 in excess losses paid under the Policies.

### AIG's Improper Collateral Increase

93.  Because the failure of AIG and AIGCS to reasonably adjust claims increased PeopLease's loss history on claims under the Policies, AIG wrongfully demanded that PeopLease increase the collateral required under the Policies, even though it was the tortious conduct of AIG that unnecessarily inflated PeopLease's loss history.

nydocs1-986271.1

94. AIG engaged in the objectionable and unfair practice of using inflated loss development and other factors outside of industry norms to justify demands for increased collateral, and holding more collateral that is reasonably necessary to secure the program against future losses. PeopLease is informed and believes and on that basis alleges that AIG profits from this improper and unfair practice by earning investment interest on their policyholder's money demanded as collateral, and that AIG increase their profits by improperly and unfairly increasing their demands for collateral unnecessarily.

95. Through the over $12 million in payments posted as security by PeopLease, sufficient funds exist to satisfy any alleged obligation owed by PeopLease to cover losses under the Policies.

96. On or about November 7, 2007, PeopLease requested that interest due on the cash security held for the period of December 1, 2006 through December 1, 2007 be acknowledged and utilized to make any outstanding payments.

97. Rather than draw down from the security posted by PeopLease and which AIG already has possession to fulfill any outstanding amount PeopLease is alleged to owe, AIG instead insisted that PeopLease make additional payments to AIG to cover the losses incurred during the policy period.

## FIRST CAUSE OF ACTION

### Negligence

98. PeopLease incorporates by reference the allegations contained in paragraphs 56 to 97 as though set forth in full.

99. AIG owed PeopLease a duty to act reasonably and exercise ordinary care and skill in the adjusting of claims against PeopLease under the Policies.

-13-

100. AIG further owed PeopLease a duty to act reasonably and exercise ordinary care and skill in the supervision of AIGCS' adjusting of claims against PeopLease under the Policies.

101. AIG failed to act reasonably and exercise ordinary care and skill in the adjusting of claims, and the supervision of AIGS in the adjusting of claims, against PeopLease under the Policies.

102. AIG knew, or with the exercise of reasonable care and skill should have known, that the failure to act reasonably and exercise ordinary care and skill in the adjusting of claims against PeopLease under the Policies would injure PeopLease.

103. AIG breached their duties to PeopLease as set forth herein. As a direct and proximate result of AIG's negligent acts and omissions, PeopLease has suffered damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Breach of the Insurance Policies

104. PeopLease incorporates by reference the allegations contained in paragraphs 56 to 103 as though set forth in full.

105. PeopLease and AIG entered into contracts under which AIG assumed the duty of properly calculating the deductible amount owed by PeopLease at the end of the policy period.

106. Despite the terms of the Policies and the parties' agreement when entering into the contracts of insurance, AIG has failed or refused to use the proper factors in its retrospective calculations which resulted in an inflated Total Payroll and inflated rating plan.

107. Pursuant to the contracts, AIG also assumed the duty of adjusting of claims against PeopLease under the Policies and supervision of AIGCS in the adjusting of claims.

108. AIG breached the terms of the Policies as set forth herein, including but not limited to failing to properly calculate the Total Payroll amount, failing to credit PeopLease with accrued interest to PeopLease on cash held by AIG, failing to exercise due care in the adjusting of claims against PeopeLease under the Policies, and by making improper demands for additional collateral or payments beyond what was reasonably necessary to secure the insurance program against future losses.

109. PeopLease has fully performed all of its obligations under the Policies.

110. As a result of AIG's breach of the Policies, PeopLease has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

111. PeopLease incorporates by reference the allegations contained in paragraphs 56 to 110 as though set forth in full.

112. The Policies were mutually binding contracts of insurance between AIG and PeopLease.

113. Pursuant to the Policies, AIG agreed to calculate properly the collateral, premiums and other amounts for which PeopLease was responsible for paying under the Policies.

114. AIG has wrongfully refused to honor the terms of the Policies and the parties' agreements made pursuant to the Policies by failing to provide benefits due

-15-

under the Policies, including but not limited to the failure to abide by the agreement to calculate properly the amounts of collateral and premium due.

115. AIG's failure to exercise reasonable and informed judgment when calculating amounts due constitutes bad faith.

116. Under the terms of the Policies, AIG additionally assumed the duty to administer and adjust claims, including the supervision of AIGCS in the administering and adjusting of claims, against PeopLease submitted under the Policies.

117. Numerous instances exist wherein AIG failed to properly adjust claims made under the Policies, resulting in excess losses of over $1 million.

118. AIG's failure to exercise reasonable and informed judgment when processing claims made under the Policies constitute bad faith.

119. AIG's bad faith and unreasonable actions constitute a breach of the Policies' covenant of good faith and fair dealing.

120. As a result of AIG's breach of the implied covenant of good faith and fair dealing, PeopLease has been damaged.

## FOURTH CAUSE OF ACTION
### (For An Accounting)

121. PeopLease incorporates by reference the allegations contained in paragraphs 56 to 120 as though set forth in full.

122. PeopLease and AIG entered into contracts under which PeopLease was required to provide AIG collateral to cover losses on claims under the Policies within the deductible.

123. AIG assumed the duty of properly calculating the amount of collateral required pursuant to a formula based in part on PeopLease's loss history for claims under the Policies.

124. PeopLease entrusted to AIG payments of collateral in the amount of over $12 million to hold as security for losses falling within the Policies' deductibles.

125. AIG has failed to properly utilize the collateral entrusted to it, including a letter of credit, posted by PeopLease for payment of covered losses.

126. AIG has further failed to provide interest on the cash amounts held by AIG despite PeopLease's request that interest due on the cash security held for the period of December 1, 2006 through December 1, 2007 be acknowledged and utilized to make any outstanding payments.

127. An accounting is necessary to show amounts due AIG, if any, and the amount due would be shown by an accounting.

128. Despite PeopLease's requests, AIG has failed to explain and account for the amounts at issue including but not limited to a proper calculation of amounts alleged to be due and owed by PeopLease and an accounting of AIG's use of PeopLease's collateral payments.

### DEMAND FOR JURY TRIAL

Defendants and Counterclaim Plaintiffs hereby demand trial by jury.

### REQUEST FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully request that the Court enter judgment in their favor and against Counterclaim Defendants as follows:

129. With respect to the First Cause of Action for negligence, an award against AIG of compensatory, direct and consequential damages, including costs of

suit, and attorneys' fees and costs, in an amount to be determined at trial, plus pre and post-judgment interest.

130. With respect to the Second Cause of Action for breach of contract, an award against AIG of compensatory, direct and consequential damages, including costs of suit, and attorneys' fees and costs, in an amount to be determined at trial, plus pre and post-judgment interest.

131. With respect to the Third Cause of Action for breach of the implied covenant of good faith and fair dealing, an award against AIG of compensatory, direct and consequential damages, including costs of suit, and attorneys' fees and costs, in an amount to be determined at trial, plus pre and post-judgment interest, and any other remedy provided by applicable law.

132. With respect to the Fourth Case of Action for an accounting, that AIG account to PeopLease for all money and payments received by AIG from PeopLease pursuant to the Policies, and an award against AIG of any sum found to be due from AIG to PeopLease under the agreements, and costs of suit, attorneys' fees and costs, in an amount to be determined at trial, plus pre and post-judgment interest, and any other remedy provided by applicable law.

133. All other relief in law or equity that this Court may deem just and appropriate.

Dated: April 11, 2012

Respectfully submitted,

By: /s/ Rene F. Hertzog
William G. Passannante, Esq.
Rene F. Hertzog, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

*Attorneys for Defendants
PeopLease Corporation, Inc. and
PLC Services, Inc.*