William G. Passannante
Rene F. Hertzog
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

*Attorneys for Defendants and Third-Party Plaintiffs*

RECEIVED
APR 25 2012
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, AMERICAN HOME ASSURANCE COMPANY, AND ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>       Plaintiffs,<br><br>   vs.<br><br>PEOPLEASE CORPORATION, INC. AND PLC SERVICES, INC.<br><br>       Defendants. | Civil Action No. 12-CV-1984 (RWS)<br><br>**THIRD-PARTY COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |
| PEOPLEASE CORPORATION, INC. AND PLC SERVICES, INC.<br><br>       Third-Party Plaintiffs,<br><br>   vs.<br><br>Chartis Claims, Inc. (f/k/a AIG Claim Services, Inc.),<br><br>       Third-Party Defendant. | |

   Defendants and Third-Party Plaintiffs PeopLease Corporation, Inc. ("PeopLease") and PLC Services, Inc. ("PLC") (collectively "PeopLease") bring these claims against Third-Party Defendant Chartis Claims, Inc. (formerly known as AIG Claim Services, Inc.) ("AIGCS").

nydocs1-986255.3

## NATURE OF THE ACTION

1.  The present action arises out of a dispute concerning alleged payments owed by PeopLease in relation to workers compensation insurance policies sold to PeopLease by Plaintiffs The Insurance Company of the State of Pennsylvania, American Home Assurance Company, and Illinois National Insurance Company (collectively "AIG") in the main action and pursuant to which third-party defendant AIGCS agreed to administer and adjust claims made against PeopLease pursuant to those Policies. PeopLease's counterclaims in the main action against AIG and its claims against AIGCS as third-party defendant (collectively, the "AIG Defendants") in the instant complaint are centered on the improper and inflated calculation of losses and adjustment of claims which resulted in excessive premium payments and requests for increased collateral deposits from PeopLease in contravention of the AIG Defendants' obligations under the Policies and duty to exercise reasonable care in their handling of PeopLease's claims.

2.  By this third-party complaint, PeopLease seeks damages from AIGCS relating to its negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of its fiduciary duty in the adjusting of claims made against PeopLease under the Workers Compensation and Employers Liability Insurance policies sold by AIG for the policy periods December 1, 2005 through December 1, 2006 and December 1, 2006 through December 1, 2007 (the "Policies").

## PARTIES

3. Third-Party Plaintiff PeopLease Corporation, Inc. ("PeopLease") is a South Carolina corporation with its offices and principal place of business in South Carolina.

4. Third-Party Plaintiff PLC Services, Inc. ("PLC") is an Indiana corporation with its offices and principal place of business in South Carolina.

5. Upon information and belief, Third-Party Defendant Chartis Claims, Inc., formerly known as AIG Claim Services, Inc., is a risk management and claims adjusting company organized and existing under the laws of Delaware, with its principal place of business in New York, New York, and is a wholly-owned subsidiary of AIG.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

7. Venue is proper in this Court due to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The Insurance Policies

8. In or about November 2005, AIG sold to PeopLease a Workers Compensation and Employers Liability Insurance program with a policy period from December 1, 2005 through December 1, 2006 (the "2005 Policy").

9. The program bound was a Paid Loss Large Risk Rating Plan ("LRRP") with a $1 million policy limit per accident.

10. The 2005 Policy required a security of $12,000,000.00 to be paid in twelve monthly installments.

-3-

11. In or about November 2006, AIG sold to PeopLease a Workers Compensation and Employers Liability Insurance program with a policy period from December 1, 2006 through December 1, 2007 (the "2006 Policy").

12. The 2006 Policy was a large deductible program with a $1 million policy limit per accident and required monthly security payments.

13. PeopLease paid all of the premiums lawfully due and owed to purchase the Policies.

14. PeopLease has complied with all applicable conditions precedent, except those that have been excused, and all obligations under the Policies.

### AIG's Failure to Properly Calculate Premiums Due Under the Policies

15. As with most LRRP insurance programs, the amount of premium for which PeopLease is ultimately responsible in a given policy period is retrospectively calculated. Pursuant to the terms of the Policies, the premium calculation for a given policy period (known as the rating period) utilized in its formula the amount of the paid losses during the applicable time period and the Total Payroll, as defined in the Policies.

16. When binding the 2005 Policies, the parties agreed that the Total Payroll amount to be used in the rating plan calculation was based on all states. The parties further agreed that PeopLease would be allowed a per diem credit of up to $52 per day when calculating Total Payroll.

17. In on about March 2007, AIG requested that PeopLease provide it with certain information in order to assist with its audit of the 2005 Policies.

18. On behalf of PeopLease, Aon, the insurance broker involved in placing both Policies, responded by email dated April 2, 2007, that AIG's requests sought information that was not consistent with the terms of the 2005 Policy.

-4-

19. In or about August and September 2007, PeopLease became aware that when AIG conducted the audit and retrocalculation for the 2005 Policy, AIG failed to include Florida in the Total Payroll, as required by the terms of the policy.

20. On or about November 7, 2007, PeopLease requested that AIG calculate the LRRP to include Florida in the Total Payroll.

21. In or about August and September 2007, PeopLease realized that when conducting the audit and retrocalculation for the 2005 Policy, AIG additionally failed to apply the proper per diem credit of $52 in the Total Payroll amount.

22. On or about November 7, 2007, PeopLease requested that AIG apply the proper per diem credit in the Total Payroll.

23. AIG's faulty retrocalculation resulted in an inflated LRRP rating of approximately $16 million for which AIG has demanded payment.

24. AIG has refused or failed to perform a recalculation that reflects the parties' agreement when entering into the contracts of insurance.

### AIGCS' Failure to Adjust Claims With Reasonable Care

25. Pursuant to the Policies, PeopLease was required to provide AIG collateral to cover losses on claims under the Policies within the deductible. The amount of collateral required was determined in part by a formula based on PeopLease's loss history for claims under the Policies. Generally, the more money PeopLease paid out in claims covered by the Policies, the more collateral PeopLease was required to provide to AIG.

26. Under the terms of the Policies, AIG also assumed the duty to administer and adjust claims made against PeopLease under the Policies. As indicated

in the binder and proposal for the Policies, administration and servicing of claims was assigned to AIGCS, a wholly-owned subsidiary of AIG.

27. Upon information and belief, AIGCS acted as AIG's agent when administering the claims made against PeopLease under the Policies.

28. Pursuant to the agreement, amongst other things, AIGCS agreed to deliver to PeopLease "effective risk control and claim management services which measurably reduce the ultimate cost of risk."

29. AIGCS further represented that it had superior knowledge and skill and is "committed to excellence, responsible stewardship and superior performance."

30. PeopLease relied on the representations made by AIGCS that AIGCS would provide claims services that would be handled responsibly and effectively to further the interests of PeopLease.

31. Pursuant to the agreement, AIGCS owed PeopLease a duty to act reasonably and exercise ordinary care and skill in the execution of its claims administration duties.

32. AIGCS failed to act reasonably and exercise ordinary care and skill in the adjusting of claims under the Policies in several regards, including but not limited to the failure to:

- Complete timely and appropriate investigations into claims;
- Adequately manage medical treatments for claimants; and
- Provide claims services that had the effect of reducing PeopLease's ultimate cost of risk.

nydocs1-986255.3

33. As a result of AIGCS' failure to reasonably adjust claims under the Policies, PeopLease was damaged by having to pay more money on claims than it would have paid had AIGCS exercised due care in performing its duties to PeopLease.

34. AIGCS' improper claims adjustment has resulted in more than $1,000,000.00 in excess losses paid under the Policies.

35. AIGCS' conduct was willful or in reckless disregard of PeopLease's interests and rights under the Policies.

36. Because the failure of AIGCS to reasonably adjust claims increased PeopLease's loss history on claims under the Policies, AIG wrongfully demanded that PeopLease increase the collateral required under the Policies, even though it was the tortious conduct of AIGCS that unnecessarily inflated PeopLease's loss history.

## FIRST CAUSE OF ACTION

### Negligence

37. PeopLease incorporates by reference the allegations contained in paragraphs 1 to 36 as though set forth in full.

38. AIGCS owed PeopLease a duty to act reasonably and exercise ordinary care and skill in the adjusting of claims against PeopLease under the Policies.

39. AIGCS failed to act reasonably and exercise ordinary care and skill in the adjusting of claims against PeopLease under the Policies.

40. AIGCS knew, or with the exercise of reasonable care and skill should have known, that the failure to act reasonably and exercise ordinary care and skill in the adjusting of claims against PeopLease under the Policies would injure PeopLease.

41. AIGCS breached its duties to PeopLease as set forth herein. As a direct and proximate result of AIGCS' negligent acts and omissions, PeopLease has suffered damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Breach of the Insurance Policies

42. PeopLease incorporates by reference the allegations contained in paragraphs 1 to 41 as though set forth in full.

43. PeopLease and AIGCS entered into contracts under which AIGCS assumed the duty of adjusting of claims against PeopLease under the Policies.

44. AIGCS breached the terms of the Policies as set forth herein, including but not limited to failing to deliver the effective risk control and claim management services promised under the Policies and by failing to properly exercise due care in the adjusting of claims against PeopLease under the Policies to reduce the ultimate cost of risk borne by PeopLease.

45. PeopLease has fully performed all of its obligations under the Policies.

46. As a result of AIGCS' breach of the Policies, PeopLease has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

47. PeopLease incorporates by reference the allegations contained in paragraphs 1 to 46 as though set forth in full.

48. The Policies represent mutually binding contracts between AIGCS and PeopLease.

nydocs1-986255.3

49. Pursuant to the Policies, AIGCS assumed the duty to administer and adjust claims against PeopLease submitted under the Policies.

50. Numerous instances exist wherein AIGCS failed to properly adjust claims made under the Policies, resulting in excess losses of over $1 million.

51. AIGCS' failure to exercise reasonable and informed judgment when processing claims made under the Policies constitute bad faith.

52. AIGCS' bad faith and unreasonable actions constitute a breach of the Policies' covenant of good faith and fair dealing.

53. As a result of AIGCS' breach of the implied covenant of good faith and fair dealing, PeopLease has been damaged.

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

54. PeopLease incorporates by reference the allegations contained in paragraphs 1 to 53 as though set forth in full.

55. The relation ship between AIGCS and PeopLease was intended by AIGCS to foster PeopLease's confidence and trust in AIGCS as it related to the administration and adjustment of claims services provided by AIGCS to PeopLease.

56. Because of AIGCS's representations about its superior knowledge and skill concerning its administration and adjustment of claims services, PeopLease placed its confidence and trust in PeopLease.

57. AIGCS knew or should have known that PeopLease had placed its confidence and trust in AIGCS and AIGCS accepted the confidence and trust placed in it by AIGCS.

-9-

58. As a result of the relationship between PeopLease and AIGCS, AIGCS sought and created a fiduciary relationship between AIGCS and PeopLease.

59. As a result of this fiduciary relationship, AIGCS owed a fiduciary duty to PeopLease of undivided loyalty, utmost good faith, due care and fidelity and a fiduciary duty to perform its claims handling responsibilities with good faith and appropriate skill.

60. These fiduciary duties also prohibited AIGCS from acting in its own self-interest or in the interests of entities adverse to PeopLease, and from placing itself in a position where its own personal interests actually or potentially were in conflict with the interests of PeopLease.

61. AIGCS breached each and every of the foregoing fiduciary obligations owed to PeopLease by participating in one or more of the following acts:

  a. Failing to represent the interests of PeopLease, and solely the interests of PeopLease, in administering and adjusting claims against PeopLease;

  b. Representing the interests of AIGCS and AIG rather than the interests of PeopLease in administering and adjusting claims against PeopLease;

  c. Failing to complete timely and appropriate investigations into claims;

  d. Failing to adequately manage medical treatments for claimants; and

  e. Failing to provide claims services that had the effect of reducing PeopLease's ultimate cost of risk.

62. As a result of AIGCS's breach of its fiduciary duties, AIGCS is liable to PeopLease.

nydocs1-986255.3

63. Upon information and belief, as a direct and proximate result of AIGCS's wrongful conduct, breaches and failures to discharge its fiduciary duty to PeopLease, PeopLease suffered damages in an amount to be determined at trial but believed to be in excess of $1,000,000.00.

## DEMAND FOR JURY TRIAL

Third-Party Plaintiffs hereby demand trial by jury as to all claims in the Third-Party Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court enter judgment in their favor and against Third-Party Defendant as follows:

64. With respect to the First Cause of Action for negligence, an award against AIGCS of compensatory and direct and consequential damages in an amount to be determined at trial.

65. With respect to the Second Cause of Action for breach of contract, an award against AIGCS of compensatory, direct and consequential damages in an amount to be determined at trial.

66. With respect to the Third Cause of Action for breach of the implied covenant of good faith and fair dealing, an award against AIGCS of compensatory, direct, consequential and punitive damages in an amount to be determined at trial.

67. With respect to the Fourth Cause of Action for breach of fiduciary duty, an award against AIGCS of compensatory, direct and consequential damages in an amount to be determined at trial.

68. With respect to all causes of action, an award against AIGCS for costs of suit and attorneys' fees and costs, pre and post-judgment interest, and all other relief in law or equity that this Court may deem just and appropriate.

Dated: April 25, 2012

Respectfully submitted,

By: *[signature: Rene F. Hertzog]*

William G. Passannante, Esq.
Rene F. Hertzog, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000
Facsimile: 212-278-1733

*Attorneys for Defendants and Third-Party Plaintiffs PeopLease Corporation, Inc. and PLC Services, Inc.*